## Case No. 18,012.

### WOODWORTH v. CURTIS.

[Cited in Gibson v. Gifford, Case No. 5,395, note. Nowhere reported; opinion not now accessible.]

## Case No. 18,013.

### WOODWORTH v. CURTIS.

[2 Woodb. & M. 524;[1] 2 Robb, Pat. Cas. 603.]

Circuit Court, D. Massachusetts. May Term, 1847.

PATENT FOR PLANING MACHINE—LICENSE TO USE.

1. Where A. owns the patent right to a planing machine, and conveys to B. the authority to use one in a certain county, B. may erect as well as use that one, so he may build and use another instead of it, but not both at one time.

[Cited in Steam Cutter Co. v. Sheldon, Case No. 13,331; Hamilton v. Kingsbury, Id. 5,984; Morgan Envelope Co. v. Albany P. W. P. Co., 152 U. S. 425, 14 Sup. Ct. 630; Illingworth v. Spaulding, 43 Fed. 831.]

2. When the term expires, that machine, then in use under the conveyance from A., may, without any new license or grant, be employed till it wears out or is destroyed, either by B. or his assigns, notwithstanding A. has obtained an extension and renewal of his patent right.

This was a bill in equity, praying for an injunction against the use, by the respondent, of the planing machine invented by William Woodworth. The plaintiff claimed to be possessed of Woodworth's rights, and also Emmons's under a like patent. The answer of the respondent [Hiram Curtis] admits the use of one of said machines in Boston, in the county of Suffolk, but insists on his authority to do it under a license from the proprietors of the patents for said machine. Several assignments were given in evidence to sustain his authority, and several affidavits on both sides were filed, tending to prove that the present machine used by the defendant was not the first one that had been put in operation under the license, and that this and another had at times been run together, and that the respondent purchased this machine of Tothill after the first patents expired.

B. R. Curtis, for complainant.
Charles L. Woodbury, for respondent.

WOODBURY, Circuit Justice. It is conceded that Richard Urann, May 26, 1840, had become proprietor of the patent right to use the Woodworth planing machine in the county of Suffolk. On that day he granted to

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

Thomas H. Holland, under his hand and seal, as follows: "I do license and empower the said Thomas H. Holland and his assigns, to use one machine in Boston aforesaid, constructed according to the specification under either of said patents," etc. "during the continuance of the term for which the said letters patent were respectively granted," etc. On the 13th of March, 1846, Holland assigned his rights, under that conveyance or power, to "William Tothill, his heirs and assigns forever;" and Tothill, on the 8th day of August, 1846, assigned the same to the respondent, "Hiram Curtis, his heirs and assigns." It is not to be doubted, that the intention of the parties to these instruments was to convey a right to use one of these machines in Boston, during the continuance of the patents which were in being, May 26, 1840.

The first question is, did this involve the right to make or procure to be made, the machine thus permitted to be used? I think it did. Otherwise the whole license might be defeated, if the grantor refused to make for him at all, or to make at any but an exorbitant price, or demanded another consideration for a right in the grantee to make for himself, under a license like this, to use one machine. From the nature of the transaction and the subject matter, as well as the terms in the conveyance about the machine, being "constructed according to the specification under either of said patents," it is probable both parties contemplated that the grantee should construct as well as use one. In respect to some patents, the rights to make, vend or use may be distinguishable from each other, yet they all are united in this patentee; and he may so convey the right to make, as to involve or include the right either to sell or use what the grantee makes. And he may so convey the right to use, as to imply the right to sell within the same limits, as well as to make machines within them. The circumstances, nature, and words of each grant must decide the construction, which is just and legal. This point is not without difficulty; but the contemporaneous construction put on the grant, by the purchaser proceeding at once to make, or cause to be made, a machine to use under his grant, and he and his grantees continuing to use at least one so made, without complaint from either the grantor or owner of the patent, for several years and till the term expired, inclines the scales in favor of the respondent's view.

The next question is, did the grant include the use of a machine during the term, though changed or amended, within the time? The first one built might wear out, or, what was very likely, be destroyed by fire, or be constructed erroneously in some important respects, or be disused entirely for some time from want of repair. Could a different one be run in such events? My opinion is, it could, as the license to use one machine

covered the whole term, and was not limited to any particular machine then sold, but merely to what must be considered one machine in number at one time.

The next question is, whether this right to use could be assigned to a third person. I think the license must be considered assignable. But much more is a machine, and the right to use it, personal property rather than a mere patent right; and much more has it all the incidents of personal property, making it subject to pass by sale, as in this case, to Curtis.

. Here, that Curtis bought the machine itself, is manifest from the affidavits of Tothill and Loring; and, beside this, the right to use it was conveyed also in the written assignment to him. The injunction, for these reasons, cannot be granted, as the sale extended the use not merely to the original grantee, as a personal privilege, and limited to him alone, but to him and his assigns; because the word "assigns" is expressly inserted in the instrument, and as the grantor was paid for the use during the whole term or continuance of the patent, and as the grantee might die or become insolvent, or wish to remove or change his business, it would be natural and useful to the grantee to stipulate for the right to assign the use, and this would be no injury to the grantor.

The next inquiry is, did the respondent use more than one machine at any one time, so as to come within the scope of the prayer for this injunction? It is certain that the conveyance would authorize the grantee and his assigns to use only one machine, at any one time, in Boston or the county of Suffolk; and though the evidence here is contradictory, some of it showing an old machine to have been used at times after a new one was procured and put in operation, and some contradicting this; yet it is clear, from the proof on both sides, that the old machine was sold by the respondent long before the filing of this bill, and not used in Boston for three or four years past, and was removed to another town and county. It went away, Loring swears, before July, 1846. and Lord swears it was in the spring of 1844. It is not, then, such an old use of that in Boston which must be regarded as now complained of, but a use of the new machine, and the new one for the work done on it since Woodworth's original patents expired on the 29th of December, 1842.

The next question left is, whether a use like this, since the expiration of the old patent, conflicts with the rights of the plaintiff under the extension of the patent which has been granted to Woodworth's representatives by the board of commissioners, November 16, 1842, for seven years longer; and whether it is or is not permissible, by the construction given to that extension by the supreme court, under the eighteenth section of the patent law of July 4, 1836. 5 Stat. 125. The leading and controlling decision

upon this question is that of Wilson v. Rousseau, 4 How. [45 U. S.] 682. The majority of the court there held, that where a machine or right to use a machine, had been sold before the original terms expired, the use might be continued till the machines then in operation under the grant wore out, or were destroyed. The reason assigned for this was, the expression used in the eighteenth section, extending the benefit of the renewal to "assignees and grantees of the right to use the thing patented to the extent of their respective interests therein." 5 Stat. 125.

Some plausibility exists in the idea, that where the right to use a machine till the end of the then existing term, had been paid for, there was an implied understanding on both sides, that the use of it afterwards would be free and undisturbed; but the assignment being only for one term, and the plaintiff having obtained another term . from the board, my own views differed in that case from the majority. I feel bound, however, to carry theirs into effect, to their full extent, as they are to be understood from the printed opinion of the court, and the reasons applicable to the subject. The respondent then having paid for the right to use one machine in Boston till the original term expired, and having a machine in operation, which existed and was in use under that right, both when the above renewal took place and the old term expired, he must, by the decision of the supreme court, be allowed to continue the use of the same machine, till it is worn out, unless a fact, which will soon be adverted to, alters or impairs that right.

The decision seems meant for and founded on a case where the grantee had a "right to use," in the broadest terms. No distinction is taken between the acquisition of that right by purchasing a particular machine, or by purchasing the right to use a machine while the term lasted, and under this creating one which continued to be in use when the original term expired. I do not therefore feel warranted in weakening or impairing the force of their decision by a discrimination not made by the supreme court itself, and perhaps not required by any very conclusive reasons. My opinion refers only to the first renewal, and has no regard to what is proper under the second renewal made by congress. But a fact just referred to requires me to consider one other question before closing. When the term expired, December 27, 1842. this machine was owned and used by Holland and those employed under him, having, according to the testimony of Coolidge, been framed and set up the summer previous; and his right to continue that use, it is argued, could not afterwards be further assigned as it was to Tothill in 1846, and the same year by him to the respondent. The assignees and grantees of the right to use it, who are by the eighteenth section to have the benefit of the renewal, are doubt-

less those holding the right, at the time of the renewal.

But what is their right, then, obtained and confirmed by the opinion of the supreme court? Not, as before remarked, in relation to the interest or license under the conveyance from Urann, in May, 1841; not a mere personal privilege. It is a right of property. The value of it is attached to the machine used, when it is the last one used at the time the term expires. The right might be assigned, separately as before; but under the decision of the supreme court the right could not be exercised after the term closes. except in the particular machine then in use. In this respect it is unlike the right which exists before the term of the patent expires, having become fixed and limited to that machine alone. It has become like a patented medicine bought by a patient. The right to use the particular quantity sold passes with the medicine itself.

There being then this property in that machine, when the term expires, like any other property, the machine and the right attached to it may pass by sale, devise, or levy of execution, or assignment of an insolvent's effects. As to the last, see 3 Bos. & P. 565; 5 Barn. & C. 169; Phil. Pat. 357; Hind. Pat. 242, 327; Sawin v. Guild [Case No. 12,391]. In those cases in 4 How. [45 U. S.] before cited, the patent right had been considered property, and even deemed assets in the hands of the administrator, and the renewal had been in his name.

[For other cases involving this patent, see note to Bicknell v. Todd, Case No. 1,389.]